IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| RUBEN SALAZAR (#M-47357), ) | |
| ) | |
| Petitioner, ) | |
| ) | |
| vs. ) | Case No. 18 C 4227 |
| ) | |
| KESS ROBERSON, Warden, ) | |
| ) | |
| Respondent. ) | |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

Ruben Salazar has petitioned for a writ of habeas corpus under 28 U.S.C. § 2254, challenging his conviction and sentence in the Circuit Court of Cook County for narcotics offenses. Salazar, his brother Sotero Salazar (the Court will refer to the brother as Sotero for clarity's sake), and five other men were charged on multiple counts of possession of cannabis with intent to deliver. Both Salazars challenged on Fourth Amendment grounds law enforcement's seizure of evidence that was used against them. The state trial judge denied the motion after an evidentiary hearing. Both Salazars then waived a jury and proceeded to a bench trial. They were convicted on all charges. The trial judge sentenced Salazar to a 14-year prison term and sentenced Sotero to a 15-year term. Their convictions and sentences were affirmed on appeal. *People v. Salazar*, 2017 IL App (1st) 143471-U, 2017 WL 531178.

In his habeas corpus petition, Salazar challenges the denial of his motion to suppress evidence; the sufficiency of the evidence to convict him; and the severity of his

prison sentence. The Court takes the relevant facts from the state appellate court's decision, which are presumed correct under 28 U.S.C. § 2254(e)(1).

## Background

**1.     The motion to suppress**

The Salazars jointly moved the trial court to quash their arrests and suppress evidence, specifically the cannabis upon which their convictions were based. As indicated earlier, the trial judge held an evidentiary hearing on the motion.

At the hearing, Chicago police officer Patrick Keating testified that in August 2011, he received information from a confidential informant regarding a shipment of cannabis arriving in Chicago via semi-truck over the weekend of August 20-21, 2011. He was given the license plate number of a cargo van to be used in the distribution of the cannabis, as well as its possible location. The vehicle was located on August 20, and police began surveillance. On August 21, Keating and other officers followed the van as it traveled to several locations, including a warehouse located at 1038 South Kolmar in Chicago. Based on the surveilling officers' observations, Keating believed the shipment of cannabis would be coming to the warehouse. A larger investigatory team was positioned near the warehouse property to conduct surveillance. In total, Keating observed six cargo vans that came to and were parked on the warehouse property.

About 9:15 p.m. on August 21, 2011, officers observed persons later identified as Salazar and Sotero arrive at the warehouse property. While there, Sotero began moving a Bobcat vehicle and a forklift to various locations. About 9:30 p.m., a police officer not involved in the investigation made a stop outside the warehouse property and illuminated the warehouse yard with his spotlight. When this happened, the warehouse

yard light was turned off, the Salazars walked to the front entrance to observe, and then they left the property. Salazar did not return until about 7:35 a.m. the next day, August 22.

At approximately 3:15 a.m. on August 22, the police observed Sotero and four other people (not including Salazar) return to the warehouse in two separate vehicles. Sotero appeared to call a meeting, motioning with his hands and appearing to give instructions. Ten minutes after this meeting, a semi-truck stopped in front of the outer wall of the warehouse property, and Sotero directed the driver to back up into the warehouse yard. He moved the forklift closer to the rear of the semi-truck, and the group worked together to pull large self-storage pods out from the truck trailer. Keating testified that this appeared to be done in an unsafe and reckless manner—in the dark, using flashlights, with no one using safety equipment. Six storage pods were removed from the trailer and placed inside a building. The semi-truck then left, and the individuals convened for a meeting and then left the warehouse.

About 7:35 a.m., Ruben Salazar returned to the warehouse property, as did Sotero and others. A total of about seven or eight men were present. After everyone arrived, one of the six cargo vans backed up into the building on the warehouse lot, everyone went inside, and the door was shut. Salazar and Sotero then left the building and remained on the yard, talking and looking around. The cargo van was driven out of the building and parked along the property fence line, and a second cargo van was backed into the building. Salazar and Sotero went inside again and later exited.

When this second van left the warehouse property, the officers decided to conduct an investigatory stop. Officer Thomas Cunningham testified that he intended to

3

stop the van far from the warehouse entrance so as not to tip off those who were still at the warehouse property.  Cunningham testified that as he approached the van, he could smell the odor of marijuana.  However, another patrol unit mistook which van to stop and attempted to stop another, different van.  That stop ended up involving police sirens and squealing tires.  Sotero noticed the commotion, went to the warehouse fence line, and then began to alert everybody within the warehouse, yelling "policia, policia."  The warehouse building door slid open, and people started running out.

Officer Keating testified that he was located near railroad tracks outside the warehouse property and that when the warehouse door was opened, he observed two green cellophane-wrapped bales within the warehouse building.  Based on his experience, he believed these bales contained cannabis.  Salazar attempted to flee by jumping a fence at the north end of the warehouse property but was intercepted and placed under arrest by Keating; this occurred as other officers entered the warehouse property.

Keating testified that he took Salazar to the location where the traffic stop had taken place and then went inside the warehouse property.  The door to the warehouse was open as other officers went inside to secure the scene and see if additional people were hiding.  Keating testified that as he approached the warehouse, he could smell a strong odor of cannabis coming from inside the warehouse.   In the warehouse, officers observed six storage pods, all unlocked and opened.  One cargo van was also inside with its back door open.  One bale of cannabis was on the floor adjacent to the van, and other bales were inside the van.

The Salazars argued that their Fourth Amendment rights were violated because

4

the officers entered the warehouse property and the warehouse itself without consent or a warrant. They also argued that the officers had probable cause and ample time to obtain a warrant but did not do so. They contended that there were no exigent circumstances authorizing law enforcement to enter the property because the officers had created the claimed exigency by frightening those who were present, causing them to flee. Lastly, they argued that although Keating had observed some bales from outside the warehouse property, the plain vie doctrine did justify the officers' warrantless entry onto the property or into the warehouse.

The trial court denied the motion to suppress. The court concluded that the officers did not create the exigency and that the lights and sirens that had caused the people on the property to flee had resulted from miscommunication rather than a deliberate effort to cause them to flee. The court also concluded that the police did not have probable cause that would have enabled them to obtain a warrant until later, when they confirmed that the cargo van contained cannabis.

**2.    The trial**

Ruben and Sotero waived their rights to a jury trial and proceeded with a bench trial. At trial, Officer Keating testified again, largely repeating the testimony he had given during the suppression hearing. He stated that law enforcement recovered 2 bundles of cannabis from the warehouse floor (the bundles he had seen during his surveillance), 79 bundles from one storage pod, 65 bundles from another storage pod, 32 bundles near the warehouse, multiple bales of cannabis from the cargo van inside the warehouse property, and 196 bundles of cannabis from another cargo van.

Officer Brian Luce testified that he was part of the team conducting surveillance

in the area of the warehouse on the morning of August 22. About 7:55 a.m., he observed a van backed into the warehouse and then observed a group of people, including Salazar and Sotero, speaking in the warehouse lot. About 25 minutes later, he observed both Salazars leave the warehouse, walk to the lot, and then look up and down the lot, appearing to "canvass" it. About 9:05 a.m., another defendant drove a van out of the warehouse and parked it next to a fence. The driver and the Salazars then re-entered the warehouse. A few minutes later, another defendant backed a different van into the warehouse. The Salazars came out of the warehouse and went to the lot, continuing to canvas it. After about 20 minutes, the second van was driven out of the warehouse and parked near a fence. The Salazars went back into the warehouse, another van was driven inside, and the Salazars came back out. Shortly after this another defendant got into one of the vans, Sotero opened the locked gate to the warehouse property, and the other defendant drove the van out. The plan was to conduct a stop of this van, but Officer Luce then heard sirens and screeching tires. He saw Sotero walk toward a fence and look through it and then go back toward the warehouse, yelling "policia, policia." He opened the warehouse door, several people ran out, and Sotero closed the warehouse door. Luce said that he did not observe either Salazar or Sotero look into, take anything out of, or put anything into any of the vans.

Sergeant Thomas Horton also testified, giving an account similar to those of Keating and Luce. He said that after people started to run and several were taken into custody, he observed that the sliding door to the warehouse was open, and he could see two bales of cannabis inside on the floor.

6

The parties stipulated regarding details about the firearms present at the scene and the quantities of cannabis discovered within the warehouse, as well as to testimony by other officers regarding their observations at the warehouse on August 22.

Following closing arguments, the trial judge found both Ruben and Sotero Salazar guilty on all counts. The judge found Keating "exceptionally, highly credible." The judge further found that that common sense dictated that it would require a crew of men to unload five million grams of cannabis, unload the bundles, and place them into separate cargo vans. Although those present at the scene had separate tasks, the judge found, all were responsible for the receipt, unloading, and attempted distribution of the cannabis. The judge also found significant the testimony regarding a strong odor of cannabis coming from the warehouse and the fact that the men unloaded the storage pods in the dark without safety precautions, indicating consciousness of guilt.

### 3. The sentencing

The trial judge sentenced both Ruben and Sotero Salazar in September 2014. They presented witnesses who testified regarding their character as hard-working, caring, family and community men. In aggravation, the prosecution called as a witness police sergeant who testified that the street value of the tested substance was $734,000 and the value of the untested substance was approximately $52,000,000.

The trial judge sentenced Salazar to a 14-year prison term and imposed a fine of $100,000. The judge noted that he found Ruben to be a key player in the offense, although slightly less than his brother Sotero, upon whom the judge imposed a 15-year prison term.

### 4. State appellate proceedings

The Salazars jointly appealed their convictions and sentences to the Illinois Appellate Court. They argued that the trial court erred in denying their motion to suppress evidence, the prosecution failed to prove them guilty beyond a reasonable doubt, and their sentences were excessive. The Illinois Appellate Court affirmed the convictions and sentences. The Salazars petitioned for leave to appeal to the Illinois Supreme Court, but that court denied their petition on May 24, 2017. Salazar filed the present habeas corpus petition on June 18, 2018. The Court previously denied and now denies against Salazar's motion for appointment of counsel, as the issues are relatively straightforward and were adequately briefed by Salazar acting *pro se*.

## Discussion

A district court may issue a writ of habeas corpus on behalf of a person in custody under a state court judgment if he is in custody in violation of the Constitution or laws or treaties of the United States. 28 U.S.C § 2254(a). A district court may not grant habeas corpus petition, however, unless the state court's judgment resulted in a decision that was contrary to or involved an unreasonable application of clearly established federal law or that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. *Id.* § 2254(d)(1)-(2). A state court decision is contrary to federal law if the state court arrives at a conclusion opposite to that reached by the U.S. Supreme Court on a question of law. *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). In making the "unreasonable application" inquiry, a court asks whether the state court's application of clearly established federal law was objectively unreasonable. *Id.* at 409.

In his habeas corpus petition, Salazar asserts three claims. He contends that the state court erred in overruling his motion to suppress evidence because the officers' warrantless entry onto the warehouse property violated the Fourth Amendment; the evidence presented at trial was insufficient to prove his guilt beyond a reasonable doubt; and the 14-year prison sentence imposed by the trial judge violated the Eighth Amendment. The Court addresses each claim in turn.

1. **Fourth Amendment claim**

In his first claim, Salazar challenges the state court's decision overruling his motion to suppress evidence. Specifically, he contends that the officers' entry into the warehouse and their seizure of the cannabis violated the Fourth Amendment. A federal court may not grant a habeas corpus petition on Fourth Amendment grounds, however, if the state court provided an opportunity for full and fair litigation of the Fourth Amendment claim. *Stone v. Powell*, 428 U.S. 465, 494 (1976); *Monroe v. Davis*, 712 F.3d 1106, 1112-13 (7th Cir. 2013). Salazar had such an opportunity if the state court was apprised of the Fourth Amendment claim and its factual basis; carefully and thoroughly analyzed the facts; and applied proper constitutional caselaw to the facts. *See Miranda v. Leibach*, 394 F.3d 984, 997 (7th Cir. 2005).

These requirements are met in Salazar's case. First, Salazar fully apprised the state trial and appellate courts of his claim and its basis when he litigated his motion to suppress before the trial court and contested the denial of the motion on appeal. Salazar raised two key points before the appellate court: (1) there were no exigent circumstances justifying the police officers' entry into the warehouse without a warrant—more specifically, that any exigency was created by the officers' conduct and thus did

not justify the entry; and (2) the cannabis should not have been admitted into evidence under the plain view doctrine.

Second, the Illinois Appellate Court conducted a thorough analysis of the facts derived from the record. When a state court's Fourth Amendment analysis is based on factual determinations fairly supported by the record, then it carefully and thoroughly analyzed the facts for purposes of *Stone v. Powell*. *Miranda*, 394 F.3d at 998. Here the appellate court discussed in detail the evidence derived from the hearing on the motion to suppress, and it related those facts faithfully in a way that the record supported.

Finally, the state appellate court applied the appropriate governing constitutional principles to the facts in the record. The court assessed eight factors set forth in *People v. McNeal*, 175 Ill. 2d 335, 345, 677 N.E.2d 841, 846 (1997), to determine whether an exigency justifying entry into the warehouse had been shown. *Salazar*, 2017 IL App (1st) 143471-U, ¶ 84, 2017 WL 531178, at *12-13 (listing *McNeal* factors); *id.* ¶¶ 85-89, 2017 WL 531178, at *13. The court also addressed head-on Salazar's contention that law enforcement had created the exigency and rejected the argument, finding based on the record that the attempted stop of the van that led to individuals fleeing the warehouse property was an unplanned error. *Id.* ¶ 89, 2017 WL 531178, at *14. On this point, the appellate court also addressed in detail relevant Supreme Court authority regarding when police may be considered to have created an exigency such that they cannot rely on it to justify a search. *Id.* ¶¶ 90-92, 2017 WL 531178, at *14 (discussing *Kentucky v. King*, 563 U.S. 452 (2011)). The appellate court also gave appropriate consideration to the plain view issue raised by Salazar, citing pertinent Supreme Court authority and addressed three requirements established in a state court decision based

on Supreme Court caselaw, *People v. Pierini*, 278 Ill. App. 3d 974, 977, 464 N.E.2d 140, 143 (1996) (citing *Horton v. California*, 496 U.S. 128, 136-37 (1990)), to determine whether the seizure of the cannabis was permitted under the plain view doctrine. *Salazar*, 2017 IL App (1st) 143471-U, ¶¶ 94-100, 2017 WL 531178, at *15-16. The court's analysis was in every respect thorough and detailed.

For these reasons, the Court concludes that the state trial and appellate courts provided Salazar a full and fair hearing on his Fourth Amendment claim. Accordingly, federal review of the claim on its merits is barred under *Stone v. Powell*.

**2.      Sufficiency of evidence claim**

The controlling federal standard governing Salazar's challenge to the sufficiency of the evidence relied upon to convict him comes from *Jackson v. Virginia*, 443 U.S. 307, 324 (1979)—whether, taking the evidence in the light most favorable to the prosecution, a rational trier of fact could have found proof beyond a reasonable doubt. The appellate court in Salazar's case, though it cited a state court decision rather than *Jackson* or other federal authority, applied the same standard in assessing the sufficiency of the evidence. *Salazar,* 2017 IL App (1st) 143471-U, ¶ 108, 2017 WL 531178, at *17. The absence of a citation to federal precedent is of no consequence, so long as neither the state court's reasoning nor the outcome contradicted federal law. *Early v. Packer*, 537 U.S. 3, 8 (2002).

The appellate court also applied the governing standard reasonably in assessing the sufficiency of the evidence in Salazar's case. The elements of the offense of possession of cannabis with the intent to deliver are: knowledge of the presence of cannabis; possession or control of the cannabis; and intent to deliver. *See Salazar*,

11

2017 IL App (1st) 143471-U, ¶ 109, 2017 WL 531178, at *17 (citing *People v. Bui*, 381 Ill. App. 3d 397, 419, 885 N.E.2d 506, 525 (2008). On appeal, Salazar contested the first two elements.

Regarding the requirement of knowledge, Salazar contended that the prosecution had not established that he knew the storage pods and cellophane bundles contained cannabis. In overruling this contention, the appellate court highlighted the circumstantial evidence: Salazar's movement in and out of the warehouse as each cargo van backed into the warehouse; credible testimony by police officers regarding the strong odor of cannabis inside the warehouse; and Salazar's secretive and furtive behavior, as well as his subsequent flight from the police. *Salazar*, 2017 IL App (1st) 143471-U, ¶¶111-12, 2017 WL 531178, at *18. The court's determination that this circumstantial evidence sufficiently established Salazar's knowledge of the presence of cannabis was reasonable.

Regarding the requirement of possession or control, the state court relied on evidence tending to show that Salazar played a significant role in the movement of the cannabis in and around the warehouse. Specifically, the court noted that he entered the warehouse each time a van backed in and that each van was filled with cannabis when it came out of the warehouse shortly thereafter. This, the court said, "reasonably suggests that [Salazar's] entry into the warehouse served some purpose in facilitating the loading and distribution of the cannabis." *Salazar*, 2017 IL App (1st) 143471-U, ¶118, 2017 WL 531178, at *19. The court also noted his apparent "canvassing" of the warehouse yard after each van was backed in. *Id.* All in all, though the court conceded that the evidence of Salazar's intent to exercise control over the cannabis "is not as

great as that against Sotero," it was nonetheless sufficient:

> Specifically, Ruben's repeated entry into the warehouse with Sotero after each van was backed in, like with Sotero, suggests that his presence served some purpose in facilitating the task of loading the vans for distribution as opposed to engaging in idle chit chat with the men performing the actual loading. In addition, Ruben's actions of canvassing the warehouse yard while the vans were being loaded belies his claim that he just happened to be present at the same place where cannabis was located. Instead, Ruben's canvassing indicates that he was facilitating the operation by making sure outsiders—cops or other strangers—did not come in or detect what was going on inside the warehouse. Certainly, the act of excluding others from accessing the cannabis necessarily indicates an intent and ability by Ruben to exercise control and dominion over the cannabis.

*Id.* ¶ 121, 2017 WL 531178, at *20. The court went on to conclude that the evidence "suggests that [Salazar] facilitated the process of preparing the cannabis for distribution when he entered the warehouse every time a van was backed in for loading and when he canvassed the warehouse yard while the vans were being loaded." *Id.* ¶ 123, 2017 WL 531178, at *20.

These findings, and the appellate court's ultimate conclusion that the evidence was sufficient to support Salazar's conviction, were objectively reasonable. The Court therefore overrules Salazar's sufficiency-of-the-evidence challenge.

### 3. Eighth Amendment claim

Finally, Salazar argues that that his sentence was excessive and violative of the Eighth Amendment due to the sentencing judge's claimed failure to consider mitigating factors and because it was excessive as compared with the sentences imposed upon his co-defendants given his relative involvement in the offense.

Under current Eighth Amendment jurisprudence, a sentence for a term of years runs afoul of the constitution only if it is grossly disproportionate. *Lockyer v. Andrade*,

538 U.S. 63, 73 (2003). Although this standard lacks exact boundaries, for purposes of habeas corpus review it warrants overturning a sentence only in the "exceedingly rare and extreme case." *Id.* (internal quotation marks omitted).

In Salazar's case, the appellate court stated that it would not overturn the sentence "unless it is fanciful, arbitrary, or unreasonable to the degree that no reasonable person would agree with it." *Salazar*, 2017 IL App (1st) 143471-U, ¶ 129, 2017 WL 531178, at *21. The "unreasonableness" standard is, if anything, stricter than the Eighth Amendment "gross disproportionality" standard, so the Court cannot say that the state appellate court applied a standard to Salazar's sentence that was contrary to federal law.

Nor did the appellate court unreasonably apply federal law in upholding Salazar's sentence. The sentencing judge imposed a sentence for a term of years within the limits authorized by statute, and when that occurs, a federal court should be hesitant in overturning a sentence that has effectively been approved by the state legislature. *See Hutto v. Davis*, 454 U.S. 370, 374 (1982). The sentence in this case, which was in the lower half of the legislatively-authorized range of 6 to 30 years imprisonment, was not grossly disproportionate given the scale of the drug trafficking operation involved. Nor was it disproportionately high when compared with Sotero's sentence.

Salazar procedurally defaulted his contention that his sentence was too high when compared with other co-defendants, as he did not support this with the record the co-defendants' sentences. *See Salazar*, 2017 IL App (1st) 143471-U, ¶ 134, 2017 WL 531178, at *22. Salazar has failed to show cause sufficient to overcome that default, so the Court declines to consider this particular claim on its merits.

In sum, the state appellate court did not act unreasonably in overruling Salazar's challenge to his sentence.

**Conclusion**

For the reasons stated above, the Court directs the Clerk to enter judgment denying Ruben Salazar's petition for a writ of habeas corpus. The Court declines to issue a certificate of appealability because reasonable jurists would not differ regarding the Court's determination that Salazar's claims lack merit.

Date: September 14, 2019

_____
MATTHEW F. KENNELLY
United States District Judge